(81 App. Div. 460.)

TERWILLIGER et al. v. WHEELER et al.

(Supreme Court, Appellate Division, Fourth Department. March 10, 1903.)

1. APPEAL—DISMISSAL OF COMPLAINT—RECORD—REVIEW.

Where a complaint was dismissed at the trial before a referee, and the answers filed were not contained in the record, they cannot be reviewed.

2. MUNICIPAL CORPORATIONS—SCHOOL DISTRICTS.

Gen. Corp. Law, Laws 1892, p. 1801, c. 687, § 3, provides that a municipal corporation includes a county, town, school district, village, etc., and Consolidated School Law, Laws 1894, p. 1207, c. 556, tit. 6, provides for the organization of school districts, the location of school house sites, etc., and article 6, §§ 42, 43, p. 1226, provide that the trustees of such districts shall constitute a board, which is created a body corporate, and that all property vested in them for the use of the school shall be held by them as a corporation. *Held*, that under such statutes a school district was a municipal corporation, and the construction of a schoolhouse on land owned by such district was a public, and not a private, improvement, within Lien Law, Laws 1897, p. 514, c. 418, § 1, defining a public improvement as one made on any real property belonging to the state or a municipal corporation.

3. SAME—MECHANICS' LIENS—FILING.

Where mechanics' liens against a school district for the construction of a schoolhouse were filed in the county clerk's office as liens for a pri-

vate improvement, instead of with the board of trustees of the district, as required by Lien Law, Laws 1897, p. 520, c. 418, § 12, no lien was created thereby.

4. SAME—SCHOOL DISTRICT TRUSTEES—SERVICE OF LIEN—DISTRICT TREASURER.

Service of a mechanic's lien notice for the construction of a schoolhouse on one of the trustees of the district, who was called the "treasurer of such trustees," but who did not appear to be the "treasurer of the district," who was the only person having authority to hold the district funds, was not a substantial compliance with Lien Law, Laws 1897, p. 520, c. 418, § 12, requiring such liens to be filed with the board of trustees of the district.

5. SAME—LOSS OF LIEN—LACHES.

Under Lien Law, Laws 1897, pp. 522, 524, c. 418, §§ 17, 20, providing that a lien for a public improvement continues for three months only after the filing of the lien, unless an action is commenced to foreclose the same within that time, a lien for materials furnished in the construction of a schoolhouse was discharged where no suit was brought to foreclose the same until nearly a year after it was filed.

6. SAME—FAILURE OF LIEN—PERSONAL JUDGMENT—DISTRIBUTION OF FUNDS.

Code Civ. Proc. § 3403, provides that in an action to enforce liens the court may adjust and determine the equities of the parties, and all issues raised by any defense or counterclaim. Section 3412 declares that, if there is a failure to establish a valid lien in the action, the lienor may recover judgment for such sums due him which might be recovered in an action on contract against any party to the action. *Held*, that such sections applied to actions to enforce liens for public as well as private improvements, and that, where plaintiff failed to establish his lien against a schoolhouse, he was nevertheless entitled to recover a personal judgment against such of the defendants as were indebted to him, and the court was justified in adjusting all the equities between the parties.

Appeal from Trial Term, Seneca County.

Action by Alonzo H. Terwilliger and another against Dewitt C. Wheeler and others to establish a mechanic's lien for materials, etc., furnished for the construction of a schoolhouse, and for general relief. From a judgment on a referee's report dismissing the complaint, plaintiffs appeal. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and NASH, JJ.

George E. Zartman and Charles A. Hawley, for appellants.
MacDonald Bros. and Frederick L. Manning, for respondents.

WILLIAMS, J. The judgment should be reversed, and a new trial granted, before another referee, with costs to appellant to abide event. The action was for the foreclosure of two mechanics' liens. Before the taking of any evidence, the complaint was dismissed as to the trustees with costs, and as to the defendants Barlow and Woodcock without costs, on the ground that no lien was ever created, and none existed which could form the basis of a judgment. The motion was based upon the allegations of the complaint, which must therefore be regarded as true.

The plaintiffs were dealers in lumber and building materials. Wheelock and his associates were trustees of union school district No. 14 of the town of Covert, Seneca county, N. Y., and as such were vested with the title to the real property described in the complaint. Barlow and Woodcock were contractors and builders, and

in May, 1900, made a contract with the trustees to furnish the mate-
rials and erect a school on such real property, and were to be paid
for the work and materials in installments at particular stages while
the work was in progress, and any balance of the contract price
upon the completion of the contract. With the knowledge and con-
sent of the trustees, the contractors made an agreement with the
Mays to furnish the materials for and do the carpenter work in the
erection of the schoolhouse, and at various times between June 20
and September 25, 1900, sold and delivered to the Mays materials,
which were used by them in the erection of the schoolhouse, of the
value and at the agreed price of $1,680.42. Before the completion
of the carpenter work, the Mays were discharged by the contractors,
who took charge of the balance of the work, and took and used the
balance of the materials furnished by plaintiffs to the Mays. The
plaintiffs have been paid the sum of $680.80, and there remains un-
paid for the materials so furnished by them $999.62. September 26,
1900, and within 90 days after furnishing the materials, the plaintiffs
filed a notice of lien, in writing, for the balance so unpaid them for
materials, in the clerk's office of Seneca county, and served a copy
thereof on Wheeler, called the "treasurer of the trustees." The lien
was entered and docketed by the clerk September 29, 1900, and a
copy of the notice so filed and docketed is annexed to the complaint.
It stated that the plaintiffs had and claimed a lien against the trus-
tees as owners of the real property, and upon such property, for the
amount of their claim remaining unpaid. Stephen N. Keener also
had a claim and filed a like lien for $496, the balance unpaid him,
and this claim and lien was assigned to the plaintiffs, prior to the
commencement of this action.

Prior to the filing of these liens the trustees had in their possession,
from the sale of bonds in their district, a sufficient amount to pay
the entire contract price for erecting the schoolhouse, and at the
time the liens were filed the trustees still retained possession of the
building fund—an amount sufficient to satisfy both the liens—and
there was due and owing to the contractors and the Mays under
their contracts an amount sufficient to satisfy both liens. The plain-
tiffs demanded judgment that they be adjudged to have liens on the
real property, and upon the moneys of the building fund in the
hands of the trustees; that the liens, with interest and costs, be paid
from such moneys; and that they have deficiency judgment against
the contractors and the Mays for any amount remaining after this
application of the moneys in the trustees' hands, and for such other
relief as might be necessary to protect their rights. The action was
commenced September 25, 1901.

There were answers in the case, but they are not contained in
the record. They cannot, therefore, be considered upon this ap-
peal. The lien law of the state (chapter 418, p. 520, Laws 1897), in sec-
tion 12, provides a different procedure to create and enforce liens
in cases of "public improvements" from that provided in case of
private improvements. The plaintiff claims the building of the school-
house in question was a private improvement, while the defendants
insist it was a public one. Section 1 (Laws 1897, p. 514, c. 418) of

the lien law defines a public improvement as one made upon any real property belonging to the state or a municipal corporation. The general corporation law (chapter 687, p. 1801, Laws 1892), in section 3, provides that a municipal corporation includes a county, town, school district, village, city, etc. A school district is not in express terms included within the term "municipal corporation," as used in the municipal corporation law (section 1, c. 685, p. 1732, Laws 1892). The formation of common school districts is provided for by title 6 of the consolidated school law (chapter 556, p. 1207, Laws 1894). Meetings in these districts and the election of officers thereof, including trustees, are provided for by title 7, art. 1, of the law (Laws 1894, p. 1210, c. 556). The locating of schoolhouse sites and the raising of moneys to build schoolhouses are provided for by article 2 of such title (Laws 1894, p. 1218, c. 556). The inhabitants of the district vote upon these subjects, and the trustees carry out the directions of the inhabitants. Article 6 of such title, by sections 42, 43 (Laws 1894, p. 1226, c. 556), provides that the trustees of each district shall constitute a board, which is created a body corporate, and that all property vested in them for the use of the school shall be held by them as a corporation. Section 47 (Laws 1894, p. 1227, c. 556), provides the powers and duties of trustees, and, among other things, to purchase a site for a schoolhouse and to build a schoolhouse thereon, when and as directed by the inhabitants of the district at a meeting thereof. The result of these provisions seems to be that while the title to the schoolhouse site is taken and held by the trustees as a so-called "corporation" and in their corporate name, still the property belongs to the school district. The building of a schoolhouse thereon for the use of the district is therefore, within the fair meaning of the lien law, a public, and not a private, improvement. Any other conclusion would be contrary to the whole purpose of the lien law—to protect public buildings from liens, and the enforcement thereof by the sale of the property, and to provide, in place thereof, a lien upon the fund furnished by the public to pay for the improvement.

Title 7 of the consolidated school law (Laws 1894, p. 1210, c. 556) provides for the establishment of union free school districts, in which the trustees constitute what are called "boards of education." These are created bodies corporate, and have power to purchase sites and to build schoolhouses thereon, to take and hold the title to the property, raise money, etc., under certain restrictions, and the direction of the school commissioners. As to such districts the same rule is applicable, however, that the schoolhouse property really belongs to the district, though the title is taken and held by the board of education in its corporate name. It is not clear what kind of a district the one in question is. The complaint calls it a "union school district," leaving out the word "free," and calls its officers "trustees" instead of a "board of education." We assume the district was not a union free school one having a board of education, but a common school district. Why the word "union," happens to be in the designation of the district does not appear, and is of no real consequence. The lienors in this case have not adopted the procedure provided

for in case of a "public improvement," to secure a lien upon the fund provided to pay for the construction of the schoolhouse in question, but have attempted to secure a lien upon the school building and property as in case of a private improvement. The liens were filed in the county clerk's office, when they should have been filed, under the provisions of section 12 of the lien law (Laws 1897, p. 520, c. 418), with the board of trustees of the district, who had charge of the construction of the school house, and the treasurer of the school district, who was the financial officer of the district, and was charged with the custody and disbursement of the funds provided for the making of the improvement. It is said that there was a substantial compliance with the statute when copies of the liens were personally served upon one of the trustees of the district, who is called the "treasurer" of such trustees. There is no provision of law for any treasurer of the trustees of a common school district. A treasurer is elected by the inhabitants of the district, and, he having given a bond, all moneys are required to be placed in his hands by the trustees. They cannot retain any money in the hands of a treasurer of their own or otherwise. Section 35 of the act (Laws 1897, p. 528, c. 418).

In union free school districts the boards of education appoint their treasurers. This district is not, however, alleged to be such a one, nor to have any board of education, nor is Wheeler alleged to be the treasurer of a board of education, but of the trustees. The funds provided for the building of this schoolhouse are alleged to be in the possession of the trustees of the district, and this must be assumed, for the purpose of this appeal, to be true in fact; but they should be in the custody of the treasurer of the district. The trustees have no right to the possession of the same, and for the purpose of determining whether a lien has been properly created against the funds we must consider who is the legal, rather than the actual, custodian thereof. The treasurer of the school district was the party with whom the notice of the lien should have been filed as the financial officer of the district, and the person charged with the custody and disbursement of the funds. It was his duty to disburse them upon the orders of the trustees of the district. No notice of the lien is alleged or claimed to have been filed with such school district treasurer, and we are unable to see how a lien could be created under the statute without such filing. It is further provided by sections 17 and 20 of the lien law (Laws 1897, pp. 522, 524, c. 418) that a lien for a public improvement continues for three months only after the filing of the same, and is discharged by the lapse of such time, unless an action is commenced to foreclose the same within that time, and notice of pendency of the action is filed with the financial officer with whom the lien was filed. The liens in question, if ever acquired by a proper filing, ceased to exist, and were discharged under these sections long before the commencement of this action, which was nearly a year after the filing of the liens. At the time this action was commenced, therefore, there were no liens to foreclose or enforce.

It is claimed, however, that the action should have been retained

for the purpose of settling the rights of the parties in the funds,
and awarding judgment according to the rights thus established,
even though the liens were never legally created, or had ceased to
exist or been discharged by lapse of time, before the action was
commenced. The proceedings for the enforcement of liens for pub-
lic and private improvements are provided for in the same title of
the Code of Civil Procedure. Section 3398 et seq. The former
are enforced against the funds provided for the improvement; the
latter against the property improved. Sections 3399, 3400. The
court may, in an action to enforce liens, adjust and determine the
equities of the parties and the priority of the liens, and determine
all issues raised by any defense or counterclaim. Section 3403. If
there is a failure, for any reason, to establish a valid lien in the ac-
tion, the lienor may recover judgment for such sums as are due
him, or as he might recover in an action on contract against any
party to the action. Section 3412. If liens for a public improve-
ment are established, judgment shall be rendered directing the mu-
nicipal corporation to pay over and distribute the funds according
to the rights of the parties as determined by the judgment. Sec-
tion 3418. The procedure for the enforcement of liens was made
a part of the Code of Civil Procedure at the same time the lien law
was passed in 1897, the one act being chapter 418 and the other
chapter 419 of the laws of that year. These two acts together were
designed to regulate the subject-matter of liens, and the enforcement
of the same, and under sections 3403 and 3412 of the Code it is very
clear that the plaintiffs were entitled to proceed with their action,
and to have the rights of the parties in the fund determined, although
the liens which were the basis of the action were, as we have found,
invalid. These sections apply as well to actions to enforce liens for
public improvements as those to enforce liens for private improve-
ments. Section 3412, expressly provides for such continuance of
the action and for the recovery by the plaintiff of a personal judg-
ment, and then section 3403 provides that the courts may adjust
all equities and determine all issues raised by a defense or counter-
claim. There is abundant authority in these provisions of the Code
for the settlement of the rights of the parties in this action, though
the liens were not established.

   In Smith v. The City of New York, 32. Misc. Rep. 380, 66 N. Y. Supp.
686, the liens were filed after the passage of these sections of the Code,
and Justice Russell held that the plaintiff could recover a personal
judgment even though the liens were invalid under section 3412.
Most of the cases cited by the respondents here arose before 1897,
when these provisions were inserted in the Code. The case particu-
larly relied upon is McDonald v. Mayor, 29 Misc. Rep. 504, 62 N. Y.
Supp. 72, 58 App. Div. 73, 68 N. Y. Supp. 462, on appeal 170 N. Y. 409,
63 N. E. 437. That case was tried at Special Term in New York in
November, 1899. The lien was filed against a fund provided for a
public improvement, under the consolidation act of New York City.
Laws 1882, p. 439, c. 410, § 1824 et seq. The lien was filed March
6, 1897, and the action to foreclose it was commenced while the pro-
visions as to liens against the city in the consolidation act were still

in force.   Those provisions were very likely repealed May 13, 1897, by the passage of the general lien law for the whole state.   They were certainly repealed by chapter 195 of the Laws of 1899.   See McKay v. The City of New York, 46 App. Div. 582, 62 N. Y. Supp. 58.   The consolidation act contained no provision similar to those in section 3412 of the Code.   The trial court held the lien in that case was invalid because not properly verified.   The Appellate Division affirmed that holding, but the Court of Appeals reversed both branches of the Supreme Court, and held the lien was properly verified and was valid. The trial court held that, the lien being invalid, no personal judgment could be rendered in the action, and the complaint was accordingly dismissed.   In arriving at the latter conclusion, the court (Justice Beekman) relied upon the old cases of Burroughs v. Tostevan, 75 N. Y. 567, and Weyer v. Beach, 79 N. Y. 409, in which it was distinctly stated that there was no provision in the statute there involved for any personal judgment on failure to establish a lien, and then, referring to the section of the Code, said:

"Doubtless, in the case of a lien against a public improvement filed under the lien law of 1897, the sections above referred to would authorize the court to render a personal judgment against the defendants liable for the claim; but the lien in this case was filed under the provisions of the consolidation act, and this action was brought under the authority, and subject to the limitations, of such provisions.   When the action was commenced, such a result as a personal judgment against any of the defendants was not possible, nor, where the lien was found to be invalid, under the circumstances existing here, could any adjudication upon the merits of the claim be either necessary or proper; so that, to hold that section 3412 of the Code, supra, became applicable to this case when the provisions of the consolidation act were repealed would be virtually giving a retroactive effect to the section, to the extent of injecting into a suit, which had been commenced long before it became applicable to such actions in this city, another cause of action.   I am satisfied that such a construction of the statute is quite inadmissible."

The Appellate Division took the same view of the question, citing and relying on Burroughs v. Tostevan and Weyer v. Beach, above, but making no reference to section 3412 of the Code.   The Court of Appeals made no reference to this question at all.   It will thus be seen that this McDonald Case cannot be regarded as authority for the dismissal of the complaint in this case.   Justice Beekman alone referred to or considered the effect of section 3412, and he regarded it as permitting a personal judgment.

Scerbo v. Smith, 16 Misc. Rep. 102, 38 N. Y. Supp. 570, was a case under the provisions of the consolidation act, and Justice Beekman there stated there was no provision in the statute for a personal judgment, and therefore Weyer v. Beach, above, was applicable. In Mertz v. Mapes-Reeve Con. Co., 30 Misc. Rep. 343, 63 N. Y. Supp. 455, it was held that the provisions of the consolidation act were applicable to the case, that no provision therein was made for a personal judgment, and that Weyer v. Beach was controlling.   In Gallick v. Engelhardt, 36 Misc. Rep. 269, 73 N. Y. Supp. 309, the lien was filed under the general lien law of 1897, and of course after the section of the Code in question had been passed.   The court (Justice Scott) held the lien invalid, and that no personal judgment could be rendered in the action, citing Weyer v. Beach and McDonald v. Mayor, above;

but he made no reference to the provision of the Code expressly authorizing such personal judgment. Apparently his attention was not called thereto, nor to the suggestions made by Justice Beekman in McDonald v. Mayor, nor to the reasoning in the case of Weyer v. Beach, rendering it inapplicable to a lien filed under the lien law of 1897, and attempted to be enforced under the provisions of the Code, above. The Glen Cave Granite Co. v. Costello, 65 App. Div. 43, 72 N. Y. Supp. 531, was also a case arising upon a lien filed prior to the lien law of 1897, and the amendments to the Code of the same date. The decision was based upon McDonald v. The Mayor, above, and no reference was made to section 3412 of the Code.

The mechanic's lien law of 1885 (Laws 1885, p. 589, c. 342) § 15, provided for a personal judgment in nearly the same language as section 3412 of the Code. The act of 1897 repealed that section, and enacted section 3412 of the Code in its place. While section 15, above, was in force, it was frequently held that a personal judgment could be rendered in an action to enforce a lien under that act when the plaintiff failed to establish the lien. Alteri v. Lyon (Sup.) 13 N. Y. Supp. 617; Hutton Bros. v. Gordon, 2 Misc. Rep. 267, 23 N. Y. Supp. 770; Sneith v. Smith, 7 Misc. Rep. 37, 27 N. Y. Supp. 379; Stapleton v. Mayor, 17 Misc. Rep. 67, 39 N. Y. Supp. 849; Ringle v. W. Iron Works, 149 N. Y. 439, 446, 44 N. E. 175, wherein Judge Gray dissented "upon the ground that because the notice of lien failed to comply with the requirements of the statute, and contained untruthful statements as to the material facts, no valid lien was created, which plaintiffs could enforce, and they could only have a personal judgment against the Wallis Iron Works for the amount actually due them." The General Term in this latter case (76 Hun, 449, 28 N. Y. Supp. 107) held the lien was invalid for the reasons stated by Judge Gray, but under section 15 of the act of 1885 allowed a personal judgment against the iron works to stand.

From this examination of the cases decided in this state it would seem very clear that in view of the provisions of section 3412 of the Code the referee erred in dismissing the complaint and refusing to permit the plaintiff to recover a personal judgment against such of the defendants as were indebted to him. And then under section 3403 it would seem that the court might go further, and adjust all the equities between the parties to the action, and determine all the issues raised by any defense or counterclaim, which would apparently result in settling the rights of all the parties in the fund, and in a judgment directing the distribution thereof in accordance with the terms of the judgment. As before suggested, the answers are not before us and we cannot say what issues are raised thereby, or counterclaims set up therein. It is sufficient for the purposes of this appeal that the complaint contains allegations which entitle the plaintiffs to recover a personal judgment against the contractors and subcontractors, and equitable relief against the trustees settling the rights of the parties in the fund alleged to be in the possession of such trustees.

We conclude, therefore, that the judgment should be reversed, and a new trial granted before another referee, with costs to the appellants to abide event.

Judgment reversed, and new trial ordered before another referee, with costs to the appellants to abide event, upon questions of law only, the facts having been examined and no error found therein.    All concur.