(42 Misc. Rep. 245.)

### WESTGATE v. SHIRLEY et al.

#### (Supreme Court, Special Term, Broome County. December, 1903.)

1. MECHANIC'S LIEN—SCHOOL BUILDINGS—NOTICE—SERVICE.

Laws 1897, pp. 520, 522, c. 418, §§ 12, 17, as amended by Laws 1902, pp. 74, 75, c. 37, require service of a mechanic's lien on a school building in a free school district, as well as notice of pendency of the action to foreclose such lien, to be made on the officer charged with the disbursement of the fund applicable to the contract under which the claim was made. *Held*, that where the lienor has served such papers on the treasurer of the board of education of a school district it is sufficient, and he need not serve them on the secretary of a committee of the board, temporarily appointed to disburse the fund raised for the erection of a school.

2. SAME—JUDGMENT.

Where foreclosure of a lien for work and labor on a school building is not defended by the school board of the district, and the contractors owe a balance to the lienor, he is entitled, under Code Civ. Proc. §§ 3403, 3412, 3418, to a judgment against them in form, but enforceable only against the fund.

3. SAME—ERRORS IN NOTICE.

Errors in the notice of lien for work and materials in the erection of a school building which are nonjurisdictional will be disregarded.

Action by Benjamin F. Westgate against Adelbert F. Shirley and James E. Waite and others to foreclose a mechanic's lien. Judgment for plaintiff.

F. Newell Gilbert (S. Mack Smith, of counsel), for plaintiff.
Walter M. Hand (Harvey D. Hinman, of counsel), for defendants.

FORBES, J. This is an action to recover a balance which is alleged to be due to the plaintiff for work, labor, and services performed by himself and his servants for the defendants Shirley & Waite in exca-

86 N.Y.S.—38

vating, teamwork, and manual labor in the erection and construction of a district school building in said town during the year 1902. After said services had been completed, and within the time required by law, the plaintiff filed a mechanic's lien against said building to reach certain funds alleged to then be in the hands of the financial officer of said school district. The construction of said school building is undoubtedly a public improvement, and the real estate of a school district cannot be sold or reached under a foreclosure of said lien. Laws 1897, pp. 520, 522, c. 418, §§ 12, 17, as amended by Laws 1902, pp. 74, 75, c. 37. The notice of lien was filed in the office of the county clerk in the county of Broome, and was served upon one John Witherrill, who was the treasurer and financial officer of said board of education. This was also served on the president of said board. Within the time required by law, this action was commenced to foreclose said lien and reach the fund raised for the erection of said school building. It is conceded that there was in the hands of the treasurer at the time said lien was filed the sum of at least $500, an amount sufficient to pay said lien. The lien law provides that after the commencement of said action a notice of the commencement and of the pendency of the action shall be served upon the financial officer having charge of the fund to be devoted to the erection of said building. It is conceded that the defendants Shirley & Waite were the original contractors for the construction and completion of said building. It is also shown that one Bogart became a subcontractor for and under the original contractors, Shirley & Waite. The plaintiff claims that his contract for the performance of the labor covered by the complaint was with Shirley & Waite only. He claims, however, that he commenced excavating under the direction and at the request of said Bogart, but with the understanding and in the belief that said Bogart was acting for the defendants Shirley & Waite. The evidence shows that within three or four days after the commencement of the excavation for said building the defendants Shirley & Waite came upon the premises, and then and there directed and ordered the plaintiff to perform the labor for which he seeks to recover in this case. The plaintiff's evidence shows that from time to time these defendants advanced money to apply upon the services rendered, and that those payments came to him through two sources: First. Two checks signed by the defendants, and made payable to said Bogart, and these were indorsed by Bogart and delivered to the plaintiff. These sums amount to $125. Said checks are dated June 9 and July 12, 1902, and are for the sums of $75 and $50, respectively, in the order of their date. The defendants claim that these checks were made and delivered to said Bogart under his contract with them, and were delivered to the plaintiff under the plaintiff's contract to perform said services for Bogart. Second. The defendants, over their own signature, made and delivered 11 other checks, which were put in evidence. Each of these checks was made payable to the order of this plaintiff, and was indorsed by him, and he received the money thereon. These payments seem to have been made substantially weekly, in the order of their date, up to and including the 18th day of October, 1902. The last one of the Westgate checks was for $50, in the same form, and was delivered to the plaintiff on the 1st day of November, 1902. Five

of these checks date from June 2, 1902, to June 28, 1902. From the evidence in the case I think other checks must have been made and delivered to the plaintiff, or, instead, payments in cash were made to him as the work progressed. The plaintiff claims that said payments were made to him by these defendants. The checks of October 18 and November 1, 1902, were undoubtedly delivered to the plaintiff and paid to him after the filing of said lien, and were probably applied upon the services performed after the 2d day of October, 1902; since that seems to be the date on which the last services were performed under the lien filed, and these two checks seem to be a continuation of payments made by the defendants, and are probably outside of the services performed under the lien, but they still show the course of business from June 2d to June 28th, and from August 23d to November 1st, and so far tend to corroborate the plaintiff's version given on the trial.

It is asserted on the part of the plaintiff that Bogart was absolutely insolvent at the time this work was being performed. That fact was known to these defendants, and the plaintiff refused to perform any of said services upon the responsibility or credit of Bogart. Bogart continued work under his contract until about the 29th day of September, 1902, when he abandoned the work and left the job. At the time of the completion of the plaintiff's services it is alleged that there was due and owing to him from these defendants the sum of $232.37, after deducting therefrom a payment made to him for services performed upon what is known as the "fire hall job"; and it is claimed that upon looking over the accounts with one of the defendants this was the sum fixed and agreed upon as the balance due and owing to him for the services so performed. While the evidence is not entirely clear, still the circumstances are such, both from the oral and the written evidence given upon the trial, that I am forced to the belief that the original contract claimed by the plaintiff was made with the defendants Shirley & Waite. The checks put in evidence by the defendants speak strongly of what that contract was, and speak at a time when perhaps there was no object in attempting to disguise the relations between these parties. The bills for lumber, brick, and certain other materials used in said building were purchased upon the credit of these defendants, and either consigned to them or directed to be delivered to them, with the full knowledge of the inability of Bogart to make these purchases upon his own credit. The plaintiff claims that he knew, at the time this work was being performed, that Bogart was insolvent, and that fact was communicated to him by one of the defendants. He also claims that while he was drawing the brick, lumber, stone, sand, cement, etc., said consignments were made to the defendants for that reason. The plaintiff's version was corroborated by several witnesses, both as to declarations made by the defendants to him, also by the bills of lading and directions under which the said materials were consigned to defendants during the progress of said work. There is no dispute between the parties that the plaintiff drew certain lumber and material for the firemen's hall, and that this labor was performed for the defendants. An adjustment was made of that account some time after the commencement of this suit, and there was found due him upon that account the sum of $5, which was applied upon the account in question, and given

credit for on the trial, under an agreement with the defendants at the time of said settlement.

From the whole evidence I am satisfied that the plaintiff's contention is probably the correct one; that he understood at the time he received the two checks which came through the hands of Bogart that the payments for the work so performed were being made to him by the defendants, through Bogart. I believe also that the items covered in detail by the evidence are sufficient to uphold the contention of the plaintiff. The serious questions in this case are whether the lien filed and sought to be enforced is sufficient in form to make it a valid lien, and whether the notice of lien was served upon the proper parties to make said lien enforceable in this action, and whether the service made upon the treasurer of the defendant school board satisfies the statute under which such service is required to be made. The evidence shows that the defendant corporation made the original contract with the defendants Shirley & Waite; that, so far as the board of education is concerned, it had no part or lot with the subcontract between the other defendants and Bogart. The evidence also shows that the money was raised for the purpose of erecting the school building in question, and that a committee was designated by a resolution of the board of education to receive the funds and disburse the same during the progress of the erection of said building. This raises the question as to whether the secretary, who became, temporarily at least, the financial officer of said board, should have been served with the notice of lien and also with notice of the commencement and pendency of the action. The treasurer of the board of education is the financial officer of the district, and I do not believe that a temporary designation—made expressly under a resolution of the board of education—changed his relation; since the treasurer still remained the financial officer of the district, while the secretary and president of the board temporarily became the custodians of the fund for the purposes of convenience in the erection of said school building to avoid more frequent meetings of said board. The treasurer was a continuing entity, and as such this financial steward could be easily traced.

Must the plaintiff be defeated in this action by the designation of a committee by the board itself, and be held responsible for failing to search beyond the head financial agent of the corporation for its secretary, the temporary custodian of the fund? I do not believe this to be a fair, safe, or proper construction of the statute. While, in this case, service of the notice of lien and of the commencement and pendency of the action might properly have been made on the person who was the temporary custodian of the funds, still I do not think this construction should be given to the exclusion of the plaintiff's claim or lien. The language of this provision of the statute is disjunctive, and, so long as service was made upon the financial officer of the board, it must be held to be within the spirit and the reason of the statute. The building fund belonged to the board of education—to the school district; and the evidence shows that the appropriation was made under a resolution of the board. The secretary and the president were used as a committee to carry out the wishes of the board of education, as a matter of convenience. This is giving such a construc-

tion to the statute as justice requires, and as is fairly contemplated by the wording of the statute.

This is an action in equity. Under the statute the building or land cannot be sold, and the judgment is in form a personal judgment against the contractors, but to be enforced out of the funds in the hands of the financial officer, under sections 3403, 3412, and 3418 of the Code of Civil Procedure.

The defendant corporation, by not answering, admits all of the material allegations in the complaint, and the board must be held to be estopped from saying that even a personal judgment against the defendants shall not be enforced against the fund in its hands, or that judgment shall not be paid out of the fund raised for the erection of the building. Code Civ. Proc. § 1207; Argall v. Pitts, 78 N. Y. 239; Bullard v. Sherwood, 85 N. Y. 253.

It is contended on the part of the defendants that there can be no personal judgment against the defendants Shirley & Waite, and authorities are cited to sustain that proposition. I think, however, the clear weight of authority is the other way. Ringle v. Wallis Iron Works, 86 Hun, 153, 33 N. Y. Supp. 398; Id., 155 N. Y. 674, 49 N. E. 1103; Terwilliger v. Wheeler, 81 App. Div. 460, 81 N. Y. Supp. 173. The case last cited is a well-considered case in the Fourth Department, and many of the prior cases are reviewed; Williams, J., writing the opinion, and all concur. That action was to enforce a lien for the erection of a schoolhouse in a common-school district, and it is there held that in cases of this character the court may determine the rights of the parties. That case is also an authority for holding that the notice filed with the treasurer of the district is sufficient. In the opinion the case of Smith v. City of New York, 32 Misc. Rep. 380, 66 N. Y. Supp. 686, is cited, and it holds that a personal judgment may be recovered where there is a defect in the lien. The courts seem to take the view that this proceeding is an equitable one for the enforcement of the rights of the parties. See Ringle v. Wallis Iron Works, 149 N. Y. 439, 44 N. E. 175. Under the statute of 1885 (Laws 1885, p. 589, c. 342, § 15) the right to a personal judgment is established. Stapleton v. Mayer, 17 Misc. Rep. 67, 39 N. Y. Supp. 845. It is difficult for me to see how these defendants can take advantage of a defense which should properly be raised by the defendant corporation, which has not answered.

The defendants claim that they were deprived of the right of trial by jury, but by going to trial without a motion to settle the issues or making a demand for such settlement of issues, and without a suggestion upon the trial that a jury was desired, they clearly waive that right. Hawkins v. Mapes-Reeve Const. Co., 82 App. Div. 72, 81 N. Y. Supp. 794; Schillinger Cement Co. v. Arnott, 152 N. Y. 584, 46 N. E. 956.

I do not see how any fraud can be claimed to have been established upon the trial by a suppression of the fact there was a subcontractor who might have been brought in to settle the rights of the parties. The plaintiff's contract was not made with him, and there was no suggestion on the trial that the proper parties were not made parties defendant, nor is that defense suggested by the answering defendant.

Nonjurisdictional errors in the notice of lien may be disregarded. It is not necessary that the precise verbiage of the statute should be followed. But the provision of the statute that the law should be liberally construed does not authorize the court to entirely dispense with what the statute says the notice must contain is true. I find no material defect which brings this case within the case of Mahley v. German Bank, 174 N. Y. 499, 67 N. E. 117. Of course, if there had been a willfully and an intentionally false statement in the notice of lien, a court of equity would not uphold it, and should not. Aeschlimann v. Presbyterian Hospital, 165 N. Y. 296, 59 N. E. 148, 80 Am. St. Rep. 723.

With my views of the case I must hold that the plaintiff is entitled to recover, and direct a judgment to be entered accordingly, to be enforced out of any funds due to the defendant contractors Shirley & Waite, and in the hands of the financial officer or committee of said corporation at the time of the filing of said lien, together with the costs of this action.

Judgment accordingly.